May it please the Court, my name is Lawrence Rosen. I represent appellants and plaintiffs below Dr. Lee, you, and Mr. Lavelle. The appellants seek reversal of two orders. One, the trial court's decision to strike allegations from the Third Amendment complaint that were fact allegations obtained through a document subpoenaed while discovery was ongoing. Who do you represent again? The appellant plaintiffs who had filed a securities class action lawsuit for violation of the federal securities laws. What's their name? Dr. Thomas Lee, Margaret Yu, and Scott Lavelle, L-O-V-E-L-L. And these are three investors who had purchased stock in Electronic Game Card, Inc., a Nevada corporation that had its main subsidiary, its operating subsidiary, in England, in the U.K., called Electronic Game Card Limited. And the appellants, plaintiffs in the trial court below, appealed the trial court's decision striking allegations that were drawn from documents that were obtained while the court had ordered discovery to be ongoing, set a discovery date. And these documents were obtained from a lawful subpoena that the court had permitted. And the court found that the PSLRA, Private Securities Litigation Reform Act, had been violated because we had received these documents after defendants had indicated an intention to file a motion to dismiss. Is it your position, counsel, that after they indicated an intention to file a new motion for judgment on the pleadings, that the stay was not renewed? Your Honor, I would say that, firstly, Mr. Cole had filed, had entered into a stipulation. So this is a really simple question. As a matter of law, is it your position that the stay was not in effect as of the time you made that August phone call? Yes, Your Honor. Okay. That's correct. Thank you. Are you also arguing that the discovery was obtained properly because it was requested at a time when there was no stay in effect? Yes, Your Honor. Okay. That's what I thought. But it's a little hard with the pleadings to make really sure that I'm clear about your argument. What the district court seems to have been concerned about is, you know, sort of a twofold problem. One, I think the district court clearly had the view that a discovery stay was in effect. And then it's a little bit unclear whether he thought that documents were obtained improperly or that they were just used improperly by being incorporated into the third amended complaint. But you seem to think that he thought they were obtained improperly. Well, if they're lawfully obtained and if they're obtained not in violation of the PSLRA statute, then their use is proper. Well, that's certainly going to be your client's position. And that is sort of a sticky spot if we have the timeline correct. And I have my clerk prepare a very careful timeline in this case because it seems to me to be uncontested, although I'm sure these gentlemen to your right are going to correct me if I'm wrong, that your discovery requests went out at a time where there wasn't a stay in effect. Yes. There had been a scheduling order. At the scheduling conference, the parties, everyone but Mr. Boyne was there. Lawyers for Mr. Boyne were not there because he had not made an appearance. Right. Every lawyer there agreed to the discovery schedule. There was no indication of any planned motion for judgment on the pleadings. Judge Carter made quite clear he wanted the dates adhered to, that he wanted things to move forward expeditiously, and we all agreed to the schedule and we promptly issued a subpoena. Right. But even after the phone call was made, and I fully appreciate this, the subpoena to the accounting firm was before the phone call was made in August, giving notice that there was going to be another dispositive motion. But after that phone call, I think your client served additional discovery requests directly on the defendants. Isn't that right? After the phone call, and I believe it was prior to the motions being filed, there were different document requests issued. Right. And so I guess I should ask, first of all, is there any allegation that responses to those discovery requests were incorporated into the Third Amendment complaint? No, I don't believe those document requests were even complied with, but I don't know. They were not at issue. Nothing dealing with that discovery was at issue. Right. I didn't see any indication they were even responded to. But certainly I agree that I didn't see any indication that they're at issue. So I'll ask the closing counsel to let me know if I'm mistaken about that as well. But this is why it seems to me to be critical to understand whether your clients are arguing both points, not only that the discovery was requested lawfully, but at what point you think that a renewed discovery stay may have been triggered, because your client issued discovery requests anyway, after the phone call. You weren't acknowledging a second discovery stay anyway. As to – I'll explain why we did not believe that the discovery stay was automatically initiated. Okay. Upon that intention to file. Okay. More upon the filing, and I'll explain why. Because these two gentlemen, Mr. Boyne and Mr. Cole, had defaulted. We had filed motions for default judges. In order to – as consideration for us withdrawing our request for default, they promised to – Mr. Cole specifically promised to answer the complaint and not file a pre-motion to dismiss – pre-answer motion to dismiss. The whole purpose of that was so that we would not get bogged down in more motion practice and delayed discovery. Where is that promise? 693. Okay. 693. That's Mr. Cole. I served on the record 693. And it was quite – so when he called me and told me he was going to file this judgment on the pleadings, and what he said was functionally the equivalent of a motion to dismiss and therefore discovery stay, I was – I was shocked. I didn't – I could never imagine that he would go back on what I thought was an agreement, and the whole basis for withdrawing the default. And so I – Mr. Cole just – I said, I can't imagine why the discovery stay would be in place because you agreed to answer the complaint and not file a motion to dismiss. So that's why I didn't hold store in what – in his claim that the discovery stay had been imposed. And I certainly didn't think it was – although he didn't suggest it, it didn't even occur to me that I should call anyone who I had sent subpoenas to and alert them that there might be a discovery stay. How about the judge? This is a discovery dispute. What do they – what happens in that district? So, for example, this is not a – do you agree with me? This is an issue of really first impression as to whether – okay. So then this is a shock to you. He said he's going to answer the complaint, no motion to dismiss, no motion litigation, and we're going to go forward with discovery. And, in fact, he had a go light on that from the judge. But he does then tell you – he gives you notice, and also there's a colloquy about whether or not discovery is to stay. Why didn't you go to the judge? Why didn't you go to the judge with him? And what would have been the procedure? Call the judge, say, Your Honor, we've got this issue. Is it stayed? You just assumed – gee, I – this was third party. It was a subpoena sent to a third party. So I don't have to do anything. Why didn't you go to the judge? Well, because a week or ten days later they – Mr. Cole filed a motion to confirm the existence of the stay. Which then brought it before the judge. You had a conversation with him before, and you knew that there was a dispute between the two of you, right? About whether or not this – you were in shock. You knew that the subpoena had been issued, right? Have I got the timing here right? You issued the subpoena. Then he calls you. He says, I'm going to file this. Yes, but he never mentioned the subpoena to me. He never said, oh, you have this outstanding subpoena. No, no, but you knew it. You knew it. There was a number of discovery items that had been issued. Wait, wait, wait. Yeah, but you knew that, wow, this is – you know what the statute is. You know that it precludes discovery after the motion is filed. And so you're not going to get this response if he's going to file this. Don't you need to go to the judge and get this resolved? Your Honor, I don't believe we – I was obligated to – Why be foolish about that? That's what you should have done. You're before Judge Carter. He's a very, very experienced district judge. He's handled the most complex cases out here. And you only have to be with him for a few minutes to know that he's in charge. And if you've got a problem, you've got to go talk to him about it. You've got to talk to his clerk about it. And if you can't, you know, and ask the clerk to schedule a hearing. And then you fly out from New York and you go see him. That's what you need to do. That's what you better learn to do because you're just going to frustrate his whole process of moving this case along. How long was it before the motion to confirm the existence of stay was filed? It was filed August 29, which was about 10 days after the phone call, I believe. And then what happened? Well, then we opposed both the motions to dismiss and we opposed the motion to confirm the existence of the stay. And the judge ultimately granted the motion to dismiss but denied the motion to confirm the stay as moved. So having denied the motion to confirm the stay, I don't know what further why that would indicate we were not permitted to use these documents that were lawfully obtained in formulating a third amendment complaint. The judge denied the motion to confirm the stay and he didn't say he couldn't use He didn't say, he didn't address the fact, he didn't alter the scheduling order. He didn't say discovery was stayed. He didn't say that even though you have discovery deadlines, you were amending it. He simply said, I'm denying the motion to confirm the stay as moved. So I'm not sure why that would bar the use of documents that had been lawfully obtained while discovery was ongoing, before any intention to file a motion to dismiss was even suggested. And the subpoena was returnable July 24, well before there was even a motion to dismiss contemplated. Well, you didn't know that at the time. But had it been complied with in a timely manner, the documents would have been received prior to the phone call, right? Yes, Your Honor. Is it your position that the third amendment complaint post the striking establishes a claim for relief? Yes, Your Honor. I'm sorry, I didn't catch that question, Judge. That is, before the judge struck the material that was received, did the third amendment complaint state a claim for relief? And if that's the case, if that's our finding, then we don't need to deal with anything else, right? Yes, Your Honor. I think that the third amendment complaint does state a claim for relief. And go through that because I'm sure that's going to be challenged. Yes, Your Honor. There were two main focuses, or shall we say misrepresentations or omissions of material fact, that were set forth in that amendment complaint. One was that there was the secret agreement that it called for the loss of the main operating subsidiary if the parent attempted to change the board of directors or exercise its control over the operating subsidiary. And so under GAAP, that generally set to the county principles, that prohibits consolidating the subsidiary's operations with the parent, claiming it to be part of the parent if you don't have control, if you don't have unfettered control, because at any time the directors could do whatever they wanted and you're powerless to control it. And so this allegation was in the third amendment complaint as well as the second amendment complaint? Yes, I believe it is, yes. So the judge saw fit to dismiss it both times? Yes, Your Honor. He accepted it in the first amendment complaint. Well, some allegations weren't challenged in the first amendment. But, Your Honor, each defendant said there was no primary violation. In contending there was not a section 20 violation, not a control person, they all said there was no primary violation, that we had not pled a primary violation. And some of them even discussed cyancer and saying there was no individual cyancer has been pled. So he may not have described it in his order, but it had to be addressed, because you cannot have a section 20 violation without a primary section 10 violation. That's mandatory. But the primary allegation wasn't really at issue, so I'm not sure this is your strongest argument. Well, so in any event, the second amendment complaint was identical to the first amendment complaint, except it added some allegations specific to Mr. Donovan to show that Mr. Donovan had made statements during the class period, because that was really the issue. The trial court thought that the secret agreement wasn't something that was material, or the omission wouldn't have been actionable, because at the time it was made, perhaps it wasn't a recognition that it would have been material. I'm paraphrasing probably not very well, but I'm sure you know what I mean. Yes, Your Honor. So I'm just anxious to hear your response to that position of the district court. Well, Your Honor, if you're an investor, and you're going to invest in a company, and they say we have our primary business is our subsidiary, and it generates all this revenue and has all these assets, but we have no control over it. Yes, I get that now, but that's all in 20-20 hindsight. How do I know? What in the record tells me that in 2002, that that's the picture that would have been painted to investors, that they really recognized that the subsidiary was the cash cow, you know, as you describe now. It was the only business. It was the only business in the company, so that was it. That subsidiary. Was that allegation contained in the third amendment complaint? Yes, Your Honor. Yes, there's no question. I'm not sure you know what allegation I'm referring to, because I just didn't quite get a chance to finish. Yes, Your Honor. That's right. I'm talking about the allegation that it just seems to me that your response about why this was material, why the secret agreement was material, is all about 20-20 hindsight, and that bothers the district court judge mightily here, and I'm trying to figure out where is it alleged that, you know, looking at it prospectively, that it should have been considered material. Well, in the complaint, it's alleged, and of course we argued it, that when you include a provision in a contract, this secret contract, it's because they anticipate that there could be this corporate infighting. They anticipate that we may disagree with the parent company, and we want to be able to maintain control. I mean, that's why they put it in the contract, because they anticipated it to be a potential problem. Well, let me think. And when a company is issuing financial statements, they're obligated to disclose the material agreements, particularly the ones that are material to whether they can consolidate the operations of its main subsidiary or control the operations of its main subsidiary. Right. So the implication was, because the 2002 agreement that you're calling a secret agreement wasn't known, that a reasonable investor would have understood there was control, real control, which is what permitted the consolidation of the financial statements, right? Yes, yes. And so there's really two aspects to it. One is the consolidation and the inclusion of the operations of the subsidiary violated accounting principles and was therefore forbidden, so they misrepresented what was on the balance sheet because they could not consolidate what they did not control. And two, they omitted to disclose this important fact that any time there was a disagreement between the UK folks, Boyn and Cole, and the U.S. folks, any time there was a disagreement, if the U.S. folks attempted to gain control, the UK subsidiary would be lost and the company would be left with no operations, the bulk of its operations. So it's both the consolidation on the financial statements of operations it does not control, which is one misrepresentation, and it's the omission to state that they could lose those operations at any time. That's another misrepresentation. Do you happen to know the citation to the record in the secret agreement? Is it 433, excerpt of record 433, that I should be looking at for that proposition? For the agreement itself? Well, not just the agreement, but the provision of the agreement that you want me to read. Or maybe when you come back to the podium. As to corporate governance? Uh-huh. I can look it up. As to the consequences of default. I think the appellants describe it in their brief. Yes. I'm sorry, appellees, in their brief, they describe specifically. But I'm looking at, just to be clear, when you come back to the podium, it's the underlying document and it's the paragraph or provision for default that you want me to look at. And I think it's at ER 433. So when you come back, if you could just verify that, that would be great. Yes, Your Honor. Thank you. So the third amendment agreement, as one proposition said, that inclusion addressed the secret agreement. The other false statement was the statement that there was $12 million in cash on the balance sheet in this, you know, held in this subsidiary. And the complaint had attached and alleged that the subsidiary had filed, Mr. Boyd had filed, had signed financial statements that were required to be filed with the U.K., what's called Companies House or Companies Registry. These annual financial statements that showed there was only 768 pounds of cash in securities. So, and the assets were almost nothing. I mean, there's almost nothing there in the business. And so I had attached those to the first amendment complaint, which was filed, I believe, in late 2010. And that was evidence that there was no money on the balance sheet. And in addition, the auditor had stated publicly that we're withdrawing our audit opinion because we could not confirm the existence, the irregularities in the confirmations provided us by management, we could not confirm the existence of this money. So, we're withdrawing our audit certifications for the last three years. They pulled the audit certifications for the last three years. Auditors don't do that unless they have a very good reason. It's a very severe action for an auditor to do that to their client. And so that was a strong indication that there really was, the money really wasn't there. In addition, on May 18th, when the company itself, you know, disclosed the existence of the secret agreement, it also said that investors could no longer rely on the financial statements, that they believed that the assets, the 12 million in cash, supposedly in the UK, is no longer, is not there, that they aren't, and they say, actually what they say is they could not confirm the existence of it, that they believe the revenues have been materially misstated or may have been materially misstated, and that the assets of the subsidiaries may have been materially misstated. So, there's a lot of strong evidence. And the district court thought that that was equally indicative of corporate infighting. So, what's your response to that? Well, your Honor. We really do know the record, so. Okay, thank you. Auditors do not pull audit opinions because of corporate infighting. They pull audit opinions because the audit evidence has been forged or there have been errors made. There has to be an error. This is what's called generally accepted auditing standards. But it's also the case that if an auditor thinks he or she isn't getting questions answered or if the information isn't forthcoming, then auditors tend to get very nervous about that. And that's what the district court was concerned about. One of the things the district court was concerned about. Yes, but these are past audits that have already been completed. So, to pull a past audit, they've already satisfied themselves. The questions were answered. Right. So, they've now come upon new information that shows that those audits are actually false. Otherwise, they would not pull them. They don't just do it on a hunch. And you argue this in your response to the motion? Yes, Your Honor. In other words, based upon your relying on the third amended complaint, even without any deletions on it at all. In other words, taking all reasonable inferences in your favor, even though there's a possibility of interpreting it otherwise, that it can be interpreted as fraud in their science. Yes, Your Honor. I think when you look at all of the allegations as a whole, overwhelmingly there's an indication of fraud. And when Mr. Boyne submitted a brand new audited financial statement that postdated the filing of the first amended complaint that had included the old U.K. financial statement, the original U.K. financial statement, the court said that that rebutted our allegation. And that, to me, was an error because that audited financial statement was prepared in response to our amended complaint. I mean, it was prepared afterwards and in response. Did you argue in the district court that the contents of the statement were disputed? Absolutely, Your Honor. That they were not authentic, that it was fraudulent. He didn't exactly take judicial notice of it. It just seems to creep right up and doesn't say that. But he says it rebuts the allegations. To rebut an allegation, it must be taken as true. And to show that it's fraudulent, that that audit is fraudulent, look, the original one that we filed, the first amended complaint, it says that they're filing what they call abbreviated financial statements because the company's law does not require audited financial statements. The size of the company does not require it. So they're submitting non-audited financial statements. That was signed by Mr. Boynt. The next time, after we submit to the court these financial statements that show no assets, he creates audited financial statements and files them. But the law never required audited financial statements. Why did he create audited financial statements and submit them after the fact? The only reason was to use them fraudulently in the court. And I think if you look at what has the history of Mr. Boynt and Mr. Cole and how they've been taking advantage of the court system and really abusing the court system in this case and in the SEC case, it shows that they have committed a fraud. And there really is no doubt that there's a fraud here, that letting them go free would be a miscarriage of justice, and the third amended complaint should be reinstated. Are there any other questions? Thank you. Thank you. You know, I'd like to just ask you one question. How does this relate to the SEC case in New York? Well, after we filed our complaint, and indeed I believe after it had been dismissed, the SEC filed a complaint which had almost identical allegations as to Boynt and Cole and Donovan, and they're not having any money in this U.K. account. The money wasn't there. And they had the same forged audit confirmations that we had attached to the third amended complaint. They had the same forged bank statements from Credit Suisse for our first Boston that we had attached. But in addition, they had extra other evidence that showed that Mr. Donovan had known about these problems during 2009 and not done anything about it. And in addition, the SEC found some evidence that Boynt and Cole had been selling stock throughout the class period through secret Gibraltar accounts and not disclosing it. But in any event, so that case was in front of Judge Sullivan in New York, and Boynt and Cole ultimately defaulted. They didn't show up for the depositions. The court kept giving them more time. They were sanctioned. They issued checks that bounced to the court to pay for the sanctions. Then they were defaulted. And then subsequently, Mr. Donovan entered a consent judgment where he's barred for five years from serving as a CEO of a public company. So that's the relationship, and I think it's indicative that dismissing this case and not giving investors a chance to proceed with their case would be miscarriage of justice. Well, is the SEC looking up for the interest they are claiming? Your Honor, they do not seek to get money. For example, for Mr. Donovan, Mr. Donovan is not obligated to pay any money. There's no fair fund. Sometimes they get a fair fund to distribute to investors. They're not expected to get money back and distribute it to investors in their case. They're just enforcing the laws as an administrative function. Is it a criminal prosecution? The SEC does not have criminal jurisdiction. They can refer it to the U.S. Attorney's Office, and I'm not sure whether they have or they have not at this stage. Under the old system, the old Chapter 10, do you know about Chapter 10? No, Your Honor. The SEC was involved in seeing to it that the investors were protected. They were an integral part of the proceeding. At this point, what we see is that the SEC is overburdened and cannot possibly police all of the commercial activity that requires their attention, and they're often a year or two years behind cases that we bring. Well, did you ever hear of a corporate fraud called equity funding? Sounds familiar, Your Honor. Well, you've got to look it up. That was the biggest fraud on Wall Street in history up until that time. That was in the 70s, and I had that case, and the SEC was involved under the old Chapter 10. And the organization was—the vehicle was a trust, and so that's why I wondered about this. Well, Your Honor, I don't anticipate the SEC will be able to recover funds. Well, it's intending to recover funds for investors, or will be able to. I believe that it will be up to us, and only us, if there's any hope that the investors will get any compensation for that fraud. How did these investors—how did they get into this deal? Well, this company was trading publicly on, I believe, a NASDAQ Golden Board, and it gets analysts to promote it, people promote it, and investors hear about it from brokers, and they're enticed to invest. So there were quite a few investors who lost money, I mean, tens of millions of dollars. Yeah, perhaps. Interpreting a statute that we're trying to analyze here, and resolve as a matter of first impression, that is what the word pendency means, does—it seems to me that that's designed to ensure that there isn't unnecessary discovery and cost against the defendant. Does it make a difference if there is more than one defendant? Your Honor, I think that the case—there's some cases, and some of the others cited the Southern Pacific case. They—some cases, some judges have said, you know, if there's multiple defendants, then it stays as to all of them, no matter—even if you get through the motion on some of them. Other judges have said, well, I think it makes sense to let this stay as to the ones that you've gotten through the motion. I don't think you have to decide that issue. I mean, I think the Salomon judge, even though he imposed a stay, said it's not a self-enforcing stay. In other words, it's up to the court to determine whether the stay should continue to apply to defendants for whom the complaint has already been sustained. So that may be another reason why it would have been a good idea for not just you, but all counsel, to go to the judge? Yes, Your Honor. And ask them that question, is that we have perhaps a stay with respect to one defendant, but not all of the defendants. And let's go forward with the other defendants. Yes, Your Honor. I agree that it then becomes the court's discretion. What we on appeal contend is that a defendant's simple phone call to say, we're thinking about a motion to dismiss, doesn't mean I have to start calling around. I know what your position is. It's quite clear. But we're talking about an issue of first impression. I agree with what you had hoped and what you thought, particularly in light of your allegations in this complaint. But it's an issue of first impression. And, Your Honor, so as a policy matter, I would agree that I would ask the court if it is going to decide that issue, that policy issue, that it be, once the complaint is sustained as to some but not all defendants, it then becomes the court's discretion to make that decision, not necessarily an automatic. Well, and if you'd gone to the judge, perhaps it wouldn't be here now. Yes, Your Honor. You would have come back and you would have, once you got this information, you would have amended the complaint and it would be down before Judge Carter. Yes, Your Honor. We're just trying to give you a little practical learning experience. No, I appreciate that, Your Honor. And in retrospect, that would have been, of course, the smartest thing to do would have been to address the issue right away. It would have saved everyone a lot of time. In fact, the judge lives with it, too. He wants to deal with it. He wants to move it along. He wants to achieve a just and fair result. He's in the driver's seat.  Yes, thank you, Your Honor. Good morning, Your Honors. Michael Cyprus for Defendants Boyne and Cole, the U.K. Old Management. My colleague, Mr. Cogan, will address you with respect to new management, the other defendants, and we've split it roughly ten minutes for me and five minutes for him. Counsel, was there a discovery stay in place when the discovery request went out to the auditor? It's unclear to me. Why would it have been in place? Why is there any question about that? Well, the minute a defendant either files a motion or announces an intent to file a motion, which had not happened at the time those discovery requests were issued. So Mr. Rosen may have been free to serve us, Athena. Okay, so the answer to my question is yes or no. The answer is I think yes. Okay, so it's a really important point, so could you explain to me why? I'm happy to listen, but as of the time those discovery requests were issued, why do you believe a discovery stay was in place? If there was an announcement by any defendant of an intent to file a motion to dismiss, the stay was in effect. I think that happened a little later. That happened in August. Sorry, I know it happened with me later. Okay, so you told me the answer to this question is yes. You think it was in place because of what? Well, no, no. I think yes, that there was no discovery in place, no stay in place when he served his subpoena. Oh, I misunderstood. Okay, so that's uncontested, right? But then you're complaining that he used the stuff he got. I'm complaining, and much more important than that, Judge Carter found both in response to your questions to Mr. Rosen that he both obtained the materials properly and he obtained them improperly and used them improperly, and here's why. Why did he obtain them improperly? Because before he got the materials with the subpoena, he knew from two defendants that motions to dismiss had been announced to be filed and were, in fact, filed. And the statute says very clearly, the statute says in any private action arising under this chapter, all discovery, all, and other proceedings shall be stayed during the pendency of any motion to dismiss. I get that. I read that. We've all read that. But it's a finer point, and I don't know, if you could just be patient with me, do we have any case law establishing that he had some duty once his discovery requests were properly issued? Are they supposed to put people on notice and don't respond to those discovery requests? I think that he has a duty to not go forward, and I think that they What does that mean, go forward? They're already out the door. The discovery requests are out the door. So what's he supposed to do, practically, if you can help me out with that? I don't understand how you read this practically. As a practical matter, he should have done either or both of the following two things. A, sought clarification from our truly outstanding trial court judge. What do I do? What about you? Well, it's not clear as a matter of law. First of all, as Judge Christensen is asking these questions, which are critical questions for us, you actually beg the question by saying, well, the answer is the judge agreed with me. Now, instead of telling us, which is our obligation to determine whether or not the judge made the right decision, as you know. So, as I mentioned to counsel, why didn't you think, gee, this is an issue of first impression, what is discovery? The discovery, the request, the third-party subpoenas were issued. Hadn't received them. Hadn't received the responses yet. And discovery means is oftentimes taken as an affirmative act. The affirmative act had passed. The train had left the station. So all he was doing is waiting to get the responses. And if anything, with the colloquy you had with counsel, why didn't you both go to the judge? Why did you sit back and decide, gee, I'm just going to play this one out, and hopefully the judge is going to rule in my favor? Actually, Your Honor, yes. No case authority at all. No case authority on Boyne. Actually, Your Honor, the facts as to myself and my client, Mr. Boyne, are very focused here. I did not know of the subpoena, and I didn't get a copy of the subpoena. And this is what part of the problem was, is that after the documents had come back. In other words, when a litigant seeks discovery, they need to copy, they need to serve the other parties to the case. Didn't get it. Didn't get it. So then we find out, then we find out, Mr. Cole's counsel. There was no discussion between you. Correct. You didn't find out about it, but you found out about it before the judge made a decision. You didn't intercede and say to the judge, you know, this information should not be turned over. This is the end of discovery of state. So here's what happened. I learned from Mr. Cole's counsel, who was told by counsel for another defendant. He, plaintiff's counsel, got documents from a subpoena and gave them to us, meaning counsel for some of the other defendants, but not us. So then with the motion to dismiss, Mr. Cole's counsel seeks an order clarifying the discovery state being in place. And then Judge Carter makes his ruling on the second amended complaint, ten and a half page ruling, and he essentially grants the entirety of the motion, leaving plaintiff an opportunity to amend his pleading. And so clearly at that point in time, at that point in time, we're in the midst of motions to dismiss. I was unaware that he'd gotten documents from the subpoena, but then when we saw the third amended complaint, then I saw that there were a whole bunch of documents that were in there that he'd apparently obtained from subpoena. That's not in dispute. The same question I asked. Counsel is certainly going to take it in a different point of view. Post-striking, the portions that Judge Carter did strike as a consequence of what he believed to be a violation of the PSLRA, Does the third amended complaint stand? Does it create a genuine or does it, in fact, defeat a motion to dismiss or a motion for judgment on the pleading? After the striking, the complaint was appropriately dismissed and should have been dismissed. And why? Well, the reason is that after the striking of the allegations, what was left was essentially what had been pleaded in the second amended complaint, which was fully briefed in front of Judge Carter, and he wrote an order. Okay, well, let's talk about what's in that complaint And why doesn't it establish on the basis of that complaint, post-striking, the false statements, false facts that would meet the requirements under the statute, and also scienter? Good. May I, with your permission, address scienter first and then the false statements? Whatever you want. Okay. I really think that this is a very strong case for the defendants on scienter. As Judge Carter ruled, there's no allegation that Mr. Boyne or Mr. Cole had stock in the company or were selling the stock in the company. There's a very rich body of law in the Ninth Circuit when it looks at scienter and motive. And Judge Carter said, I don't find any reason to think that Boyne or Cole had motive. They didn't have stock. They weren't selling it. And there's a rich body of law in this circuit, including about five cases that we cite, where even sometimes when there are insider sales, the court looks at the quantum and the percentage and whether it's unusual or not. And in five cases that we cited to the court from the Ninth Circuit, including Glaser and Deo and Vantive and Meltzer and Silicon Graphics, the court nonetheless said, there's no scienter here. And tellingly, that was a major point in our brief and in the reply brief. Even taking all reasonable inferences in favor of the plaintiff. Absolutely. In the reply brief, it wasn't dealt with for more than a line. In other words, almost all the reply brief was devoted to the discoveries they issued and whether or not documents were obtained properly. And they didn't respond to any of those five cases that I mentioned on scienter. So I think that clearly the court can be comfortable that Judge Carter made the proper ruling on scienter, when you've got this whole body of Ninth Circuit law that says, even sometimes in the face of sales of stock, that doesn't establish scienter. And here there's no allegation that they sold stock. So I think that that's a very strong basis for affirmance. And even if there was a misstatement, and we contend there wasn't, even if there was a misstatement, absence of scienter, there cannot be a securities fraud claim that goes forward. And I cited at least five cases that I think, decided by this court, that I think are very helpful, and there's others in the papers. On false statement, I also think that Judge Carter got it right. The 2002 agreement, it's labeled, quote, secret agreement by the plaintiffs, but it wasn't a secret agreement. It was in the company's records. It was referred to in board minutes. It was referred to in letters that Boyd and Cole wrote to the other faction on the board that they were having friction with. And those letters were filed with the SEC. So not only was it not a- Was it produced to the auditors? Any indication the auditors ever knew about it? I don't know the answer to the question. I don't. I assume that they would have had access, but I don't know the answer to the question. Thank you. So what Judge Carter ruled was, since five to seven years had gone by without the condition of change of control coming into place, that that was not deemed to be something that he thought it was remote. It was not a material thing that needed to be disclosed. And it certainly wasn't secret. So that goes to both whether it was a false statement and whether there was see-enter. And on the other issue about the auditors withdrawing, Judge Carter drew upon established law in the Ninth Circuit and elsewhere that says just because an auditor withdraws an opinion does not mean that there's necessarily a misstatement, a knowing misstatement. And counsel for the plaintiffs made a statement that is just factually false when he said auditors don't withdraw opinions when there's a dispute in management. That's a false statement. That's one I think, Your Honor, that you picked up on the underlying truth is that when an auditor sees warring factions of management, they get very concerned. Sometimes. It could go either way. What I agree with you about is that we don't know. Yes. I can tell you that it happened to me in the last month. Great. But it may have happened the other way in the last month. So that's not really very conclusive for us. I think either way, maybe there's a draw on that. Can you help me with this? If this agreement wasn't secret, why would the directors have taken the actions that they took that caused them to lose the subsidiary? Isn't that kind of the obvious point he's making? Why would they have done that? It was suicide, wasn't it? My understanding from the record, which includes letters that Mr. Cole and Mr. Boyne wrote to the other faction on the board, it said, guys, you can't remove us because if you do, it will be a very serious consequence. And I don't know. Suicide, it seems to me. I'm not trying to be glib, but it seems to me there's a very strong indication they did not know about the terms of that agreement or else they surely wouldn't have taken this step. Is there any explanation from your team for that? The explanation from my team and my clients and what they wrote to the SEC is, please don't do this. It would be bad. You've been warned. Meaning, sorry, that your client said that to their compatriots at the time. To the other members of the company, yes. And why the action was ultimately taken, my clients don't know. Okay. In addition to saying, please don't do this, did your clients ever say, and by the way, there's this 2002 agreement and we're going to lose control of our subsidiary and the IP license, and did they explain any indication they explained to the other board members the terms of that agreement? My understanding is that effectively they did. Where? If you look at some of the letters that are filed as part of the second amended complaint. Okay. These were filed by plaintiffs. There's a pleading called second notice of errata regarding consolidated second amended complaint. Counsel, could you just give me the ER on that? I can give you the district court number. Okay. I'll take it. Okay. So if you look at this particular pleading, document 100. Okay. Page 25 of 54 through 52 of 54. Okay. There are three letters from Boyd and Cole, and those were filed with the SEC. And do you know when they were filed with the SEC? Yes, there was an 8K that the company filed, and it appears to be dated April 22 of 2010. Okay. And it's signed by Mr. Donovan. Okay. So I would say that that goes to not only false statement or lack thereof, but also lack of CN term. Sorry. On 422, all those letters were filed? They were attached to an 8K that was filed with the SEC. That's all at the same time? Yes. Okay. You'll see that on page 39 of 54. Thank you. In this document. So if there are no further questions, I'll yield to my colleague. Actually? Actually? If it pleases the court, I could address the court's questions on the stay issue. Good afternoon. This is Jeffrey Greenbaum. I am on the telephone of Counsel for Mr. Cole. Excuse me, Counsel. I'm not done. I'm sorry. That's all right. Counsel, opposing counsel indicated that Mr. Cole, I think not your client. That's really my question. That Mr. Cole had promised as a condition of vacating the entry of default to answer and not to file a motion to dismiss and motion for judgment on the pleadings. Is there any comparable promise that was made by your client? No. I never promised because the federal rules permit a defendant to answer and move to dismiss at the same time, and I did so. Thank you. May I answer the court's questions? We'll come back. We'll take a quick break. The disembodied voice, what's your name? My name is Jeffrey Greenbaum. Jeffrey, we allowed you to listen but not to speak, and that is our ruling stands. Okay. I just wanted to address one or two of the questions. That's all right, Jeffrey. That's what we told you what the situation was, and that's where we are. Counsel, I didn't get your appearance. I'm sorry. Could you repeat? Jeffrey Greenbaum. No, no, no. I'm not yours, Jeffrey. You're supposed to be quiet. I'll start speaking. Your Honor, good afternoon. My name is Jonathan Cogan. I represent Paul Farrell, who, along with all of the other individual defendants in the case other than Mr. Cole and Mr. Boyne, is not accused of having committed a primary violation of the securities laws, but rather is being sued solely as a control person defendant in this case. Let me start by saying, to the extent it's not clear from our papers, that the argument that I'm about to make is one in the alternative. In the first instance, the control person's position is that for the reasons that counsel has articulated, both in his papers and oral argument, the decision of Judge Carter should be affirmed, that as a result of that, there should be a finding that there was no primary violation of the securities laws, and I think that all of us agree, including my colleague, that in the absence of a primary violation of the securities laws, there's no control person liability. Our argument is that if this court were to reverse and find that there was a primary violation stated as to Cole and Boyne, you should nonetheless affirm the dismissal as to the control person defendant, on the ground that in the plaintiff's effort, the appellant plaintiff's effort, through various iterations of their complaint, to plead facts that give rise to a compelling inference of scienter, which is what they have to do in order to state their primary violation, that in their effort to do that, what they have necessarily done is they've pled facts that compel a conclusion that the control person defendants had nothing to do with the alleged fraud. I'll continue. Had nothing to do with the alleged fraud and that we lacked scienter. But the district court never got there, right? That's correct. And so what I'd be asking you to do is to affirm on the ground that the district court never reached. In the first instance? In the first instance. To basically look at the complaint, just as the district court could, and say, based on the allegations, and now we're talking about the third amended complaint. Right. Why would we want to do that? I'll tell you why. Out of efficiency, because you can. If I were efficient, you wouldn't even be standing there. Okay, well, okay. I think out of, nonetheless, out of efficiency, because you can, and because, you know, I think as the PSLRA acknowledges, and I'll come back to this for one minute at the end, this is expensive for my client, who's an individual. He's not a corporation. He's not indemnified by a company. The company is out of business right now. He doesn't have insurance. And so what we're asking you to do is to review the allegations in the third amended complaint. I've got one of L.A. County's top pro bono lawyers here, and he'll teach you about the importance of pro bono work. It's good for the soul. He's not trying to do pro bono work. That's right. That's right. I'm trying not to have to do pro bono work here. You don't want to do that as a part of your professional obligation. That's correct. Okay, so can you answer the question for me that I was trying to get at earlier about the secret nature of this agreement? How could the other folks have known about it and done what they did? I actually think this is where we would par ways with what Mr. Cipher said. I think that what's being alleged in the third amended complaint is, unlike prior versions of the complaint, very clearly their allegation that the control persons were kept in the dark. I'm calling off the control persons. That's your whole point about this scienter, right? That's my point about scienter. And what I wanted to do in my limited time was to make one legal point on this exact issue and then a sort of equitable fairness point at the end of my remarks. But let me address this, and if we could, I want to walk through the two or three paragraphs in the second amended complaint and comparing them to the allegations in the third amended complaint as they relate to our knowledge, our, meaning the control person, defendant's knowledge of this secret agreement. If you look at the second amended complaint. At which page? It's paragraph 148, which is 823.5. That's okay. It's page 148 of the second amended complaint. It's page 55, paragraph 148. Oh, sorry. Paragraph 148. What do we see there? Okay. What you'll see is that the plaintiffs are alleging that each of the defendants, including the control persons, had access to the board minutes and resolutions of EGC existing from 2002. It goes on from there. And then they say, in no uncertain terms, the 2002 secret agreement must have been known to each of the defendants. And they go on from there. So the plaintiffs, back at the time that they were alleging what they were alleging in the second amended complaint, were saying, we knew about it. And so they were alleging that, you know, either we knew about it or we were reckless in not knowing. But the story that they were telling at that point was that the control person's defendants knew about it. Right. And in the third amended complaint? And in the third amended complaint, they flip-flop on this point. Paragraph. Okay. Paragraphs, I think it's sort of 84 to 91, but I'll ask you to look at 85 in particular. Okay. That's the place to start. Paragraph 85. I think we all know this, but just to make sure we're on the same page. Of course, Judge Carter ruled after they filed their second amended complaint, but before they filed their third amended complaint, that it should be dismissed, that they had failed to state a primary violation, that they basically hadn't juiced up their allegations of Sienta against Cole and Boyd enough to survive. So what did they have to do? They had to change their story in order to come up with more compelling inference of Sienta to try and survive in the third time. And tell me what paragraph 85 says. Okay, 85. 85 says, on August 29, 2011, in connection with his motion to dismiss, Boyne filed with the court a declaration authenticating EGC board minutes dated February 1, 2006, signed by Boyne and Cole. The purpose of filing these purported board minutes was to prove to the court that EGC's board was aware of the 2002 agreement. Okay. So, in other words, what they're alleging in paragraph 85 was that Boyne attached documents to show that the board was aware of the secret agreement, which is exactly what they had previously been alleging in their second amended complaint. But what they go on to say in the subsequent paragraphs culminating, and I believe paragraph 91 is that, you know, they've gone on to subpoena the auditors and the auditors didn't turn over these board minutes that had been attached by Boyne. And so that the most likely inference from these facts is that Boyne and Cole either concealed the February 1, 2006 board minutes and the February 1, 2006 amendment to the 2002 agreement from M&B, that's the auditors during the audit process, or two, Boyne and Cole fabricated the February 1, 2006 board minutes and the February 1, 2006 assumption agreement amending the 2002 agreement as a further cover-up for their fraud. So I think if you read paragraphs 84 through 91 of the third amended complaint, you see that the plaintiffs have actually changed their story. Doesn't the third amended complaint say that Cole and Boyne concealed the 2002 agreement from the auditors as evidenced by the fact that the auditors produced minutes from the January and March 2006 meetings but not February, and that February minutes spoke of the agreement? That's what I was trying to articulate. In other words, that Boyne attaches February minutes to his motion to dismiss that purport to reference this, or they do reference this, quote-unquote, secret agreement. Indicating that the other folks knew about it. Right. The plaintiffs are alleging that the reason he did that was to prove that the control person defendants knew about it. And what the plaintiffs are now saying in their effort to plead Sienta as to Cole and Boyne is that we think the most likely inference is that that document that he attached actually was either fabricated or that it was concealed in the first place. Now, on reply, the only thing that I see counsel or plaintiffs say in response is, well, no, we said that either they were fabricated or that they concealed them from the auditors, but we didn't say that they concealed them from management. Right. And I think the response there is on the facts and the story that's been played here, that's implausible. In other words, the entire thrust of their complaint is that there's a warring factions going on here. Right. In other words, that Cole and Boyne are at odds with, quote-unquote, new management. And so what I would say is that the notion that they would be concealing the documents from the auditors because they knew that they were problematic, but nonetheless, sharing them with the very control person defendants who they're at odds with is implausible, and I think the court can find that. And as a result, I think that what you get to, not only with this, which I think is a good example of it, but with the entire complaint, what you get to is that in their effort to try and plead Sienta, they have effectively compelled an inference that the rest of us were kept in the dark and that we didn't have anything to do with the alleged fraudulent conduct. And because they've compelled that inference, they failed to state a control person liability claim. Unless the court has any questions on that, I wanted to make a very quick, I guess, equitable-slash-fairness point in closing, which is, as Your Honor mentioned earlier in this argument, as it related to the TSLRA, the whole rationale behind the TSLRA is that discovery is extremely expensive. And this goes to the point that I made in the beginning of my remarks, which is, in the event that the court is inclined to reverse Judge Carter as to Cole and Boyne, unless our motion is nonetheless granted or our argument is nonetheless granted, the result of that is that that extraordinary expense that the TSLRA is just predicated on is borne upon us when we have to go through all of discovery and the tremendous cost associated with that. In a case where the allegations are now such that the plaintiffs are saying, we really had nothing to do with it, we're not the bad guys, it was someone else, and you were kept in the dark about it. And I just think that that's unfair and that's improper. So unless the court has any other questions, I'm done. Thank you. Thank you. Mark? Ben, sure. Go ahead. Thank you. First, to address Judge Kristen's question about where the documents, the 2002 agreement is located in the records, approximately – So that wasn't my question. I wanted to know which paragraphs you wanted me to look at about the default consequences. And my question was, is that on page 433? It's either 432 or 433. Okay. That's fine. Thank you. So first, as to the issue regarding the stay, even in cases where the courts have found that the stay should be reinstated, they have not quashed outstanding subpoenas, nor have they forbidden documents received after the stay, such as this case. Has any court addressed that? Yes. So there's the South, Southern Pacific case, Judge Pechman, if I'm pronouncing it correctly, in I believe it's Oregon or Washington? Pechman. Pechman. Pechman. P-E-C-H-M-A-N. It's in Southern Pacific security litigation. And another one was the Lane case. And I can give you the precise sites if you'd like. We have these six states that I'm trying to sell. And we have them here. Fill those out. Yes, Your Honor. The other case is a district in New Mexico case, and it's the Lane case. In both cases, the courts were faced with similar situations. It announced intention to file a second amendment. A second amendment complaint was being filed, motion was dismissed, pending, and discovery had already started. And the court said, well, we're going to reinstate the state, but the discovery you've already received or you can use, and the discovery that the subpoena just went out, we will not quash. The Lane case specifically said we won't quash that. I think you cited Lane, didn't you? Yes, Your Honor. And I replied briefly. All right. Now, I'd like to move to the question about the 30-minute complaint sufficiency. Mr. Boyne's counsel suggested that the lack of stock sales was his lack of stock sales meant that they had no reason, no motive to commit fraud and, therefore, are innocent. But the SEC found – now, remember, when the SEC files a complaint, five commissioners have to vote on it. They review the evidence and they vote on it. They said that they had been selling stock, Boyne and Cole had been selling stock through secret Gibraltar accounts. Now you're talking about the SEC action? Yes. Which was not before the district court. Not before the district court. Why are we talking about this? The reason I mention it is because he's asking you to make an inference of facts. Well, counsel, that's because you're asking us to make an inference by referring to the SEC complaint. But to make an inference of facts that you know is not accurate is, I think, uncalled for. If the record, if the district court's record shows, in another district court, shows that those facts are inaccurate, one shouldn't ask the court to make an inference that one knows is not accurate. You're asking us to take judicial notice of the SEC case. Yes, Your Honor. And that is judicial notice of what is a matter of public record. Yes. And the fact that the fault has been entered, sanctioned, issued, and so forth, based on the SEC. So to these tempers of the NOVA review today, I think it's fair to take judicial notice of that. Of what exactly? Of the existence of the SEC complaint? The existence of it and the fact that the fault was issued against Boynton Cole for sanctions issued, terminating sanctions issued because they failed to respond to discovery, failed to go to depositions, failed to produce documents. What's the unfair inference that opposing counsel made that you're trying to call attention to? Well, he said that there's no reason to believe that they acted with scientific because they never sold any stock. And the SEC action says that they were selling millions of dollars worth of stock through secret to call for account. When you say action, you're talking about a complaint. Yes. There's an allegation and a complaint. And then there's an outcome, apparently, that's the result of a default of not participating. Yes. So there's no finding, right? Well, the SEC made that determination. Made what determination? That the stock isn't sold. I understand it's not evidence. It's just an allegation, but it certainly countermands any inference that they might ask the court to make that no stock was sold. That's all I suggest. Secondly, Mr. Boynton signed the U.K. financial statements that showed 768 pounds rather than 12 million in cash. He signed those financial statements and filed them. Third, both of them admit they were aware of the 2002 agreement. So that shows their knowledge, their actual knowledge of the false statements. Secondly, they point to letters to the SEC suggesting that the other members of the board were aware at all times that they hadn't hidden the secret agreement, the agreement wasn't secret. But those letters were written after. They were written in 2010 after this had come to fore, after the company had fallen apart. It was an exculpatory statement after the fact and should not be credited. Now, Mr. Seibers also said he never promised not to file a motion to dismiss. That's true. The agreement he signed said he would file an answer. And, of course, I learned another valuable lesson in that in the sense that I assumed when he meant he was going to file an answer, Matt, we weren't going to have to go through a whole number of motions. It was my mistake. My mistake. Another valuable lesson learned. Lastly, there was an issue as to why the auditors pulled their opinions, why they said we no longer can, we are withdrawing our audit opinions. And Mr. Boyne suggested it was because of a conflict in management. But the auditors actually, if you go to page 155 of the record, in the 30-minute complaint, we cite to an 8K issued by the company, and the auditors said why they pulled their audit opinions. They said that they pulled their audit opinions because based on their investigation and inability to confirm the balances in the account, the auditors have concluded that their prior audits could no longer be relied upon and that it was withdrawing its audit opinions for EGC's finance statements for the three years, 06, 07, and 08. So they said why they pulled the opinions. At what page? It's 155. It's paragraph 140 of the 30-minute complaint, page 155. I have it, but thank you. All right. And so it was clear why they pulled the audit opinions because Why don't you wrap it up? So lastly, Your Honor, as to the control persons, counsel for some of the control persons said that it's unfair because there's no science or they're not culpable. But that's not an element of a control person claim. We just have to show control at the pleading stage. They have an affirmative defense of good faith, which they have to show on a motion for summary judgment. And so I think it would be inappropriate to grant their affirmative defense at this stage. Thank you very much. All right. Thank you. Thank you very much. And we'll recess until 9 a.m. tomorrow morning. Thank you. All rise for the next recess until 9 a.m. tomorrow morning.
judges: Silver, Pregerson, Christen